[No. 7,928.]

# MOSES SPRAGUE v. THOMAS EDWARDS, J. S. HARBISON, JOHN A. BURKE, LEONARD HOYT, FRANK JUISTO, DOMINGO ROCCO AND GIOVANI SACCONI.

LEGAL EFFECT OF A DEED.—The legal effect of a deed will be determined from the instrument itself, construed in the light of surrounding circumstances.

CONSTRUCTION OF TRUST DEED.—A deed conveying land to a trustee who has no beneficial interest, with power to sell and lease, will be most strongly construed against the trustee, and most favorably to the beneficiary under the trust.

CONVEYANCE OF TRUST LAND BY TRUSTEE.—When a conveyance is made to a trustee, who has no interest in the trust fund, with power to sell and convey the trust lands, subject to the approval of the *cestui que trust*, the deed of the trustee to a purchaser will not pass the legal title without the approval of the *cestui que trust* in writing.

INSERTION OF WRONG WORD IN CONTRACT.—When it is apparent upon the inspection of a contract that, by a clerical error, a wrong word has been inserted, it will be read, in an action at law, as though the right word was in its place, and resort need not be had to a Court of equity for a reformation of the instrument.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

Ejectment to recover a tract of land in the county of Sacramento, described as " commencing on the east bank of the Sacramento river, where Main street, in the town of Sutterville, would strike said bank, being the southwest corner of a tract of land conveyed by John A. Sutter to L. W. Hastings; running thence easterly along said south line of said Hastings' tract one mile; thence at right angles southerly one half mile; thence at right angles westerly to the Sacramento river; thence up and along the Sacramento river to the place of beginning."

The following was the deed from Robinson and others to Saunders, which is construed in the opinion:

"This indenture, made this twenty-third day of June, A. D. one thousand eight hundred and fifty-five, between Henry E. Robinson, Eugene F. Gillespie, John S. Fowler, John McDougal and Wake Brierly, of the counties of Sacramento and San Francisco, State of California, parties of the first part; Lewis Saunders, Jr., of the County of Sacramento, of the second part, and John A. Sutter, of the County of Sutter, State aforesaid, party of the third part: Whereas, on the 1st day of July, 1850, John A. Sutter and Ann, his wife, executed to said E. Robinson, Eugene F. Gillespie, John S. Fowler, and John McDougal, a deed of conveyance, dated that day, for a certain tract of land bounded as follows: Commencing on the east bank of the Sacramento river, in latitude thirty-nine degrees, forty-one minutes, forty-five seconds, and running thence on said parallel of latitude to the Rio de los Plumas, Feather river; thence down said Feather river with its meanderings to its junction with Sacramento river; thence up and along the east bank of said Sacramento river to the place of begining;

also, whatever right, title, interest they may have in and to
any other tract or parcel of land whereto they might have
or be possessed of in the State of California, as will more
fully and at large appear from the said deed, which is re-
corded in the office of the Recorder of Sutter Conty, in
Book of Deeds ——, pages ——; and whereas the said
Eugene F. Gillespie has purchased and acquired all the
right, title, interest and estate of the said John S. Fowler,
and the said Wake Brierly has purchased and acquired all
the right, title and interest, and estate of the said John
McDougal in and to said tracts or parcels of land; and
whereas, the said deed or conveyance, certain covenants
and conditions are to be kept and performed on the part of
said Robinson, Fowler, Gillespie and McDougal, as parties
of the second part therein, a more full statement and enu-
meration of which may be had by reference to said deed or
conveyance, recorded as aforesaid; and whereas, differences
and controversies have arisen and exist under the said deed,
which differences and controversies it is the mutual desire
of the parties hereto to end and determine, and it is the
further desire of the parties hereto to become seized and
possessed of certain ascertained and deferred rights, titles,
interests and estates in the tract or parcel of land herein
first above particularly described; now, therefore, this in-
denture witnesseth: That the said parties of the first part,
for and in consideration of the sum of one dollar to them in
hand paid, the receipt whereof is hereby acknowledged,
and also the consideration of a certain deed of conveyance
bearing date even herewith, executed by the said Sutter,
and Ann, his wife, and P. L. Edwards, to Eugene F. Gil-
lespie, Henry E. Robinson and Wake Brierly, of and for
the undivided seventy-four one hundredths ($\frac{74}{100}$) equal
parts of all their rights, title, and interest and estate in
and to all of the said tract or parcels of land herein first
above particularly set forth and described, except the res-
ervations hereinafter stated, and for the further considera-
tion of the final adjustment and compromise of all the dif-
ferences and controversies aforesaid, and of the release
made in said deed from said Sutter and wife, and P. L.

Edwards to said Robinson, Gillespie and Brierly, of the said Robinson, Gillespie, Fowler, McDougal and Brierly, and each of them, their heirs, executors, administrators and assigns, of and from all further fulfillment or performance of any and all acts, covenants, and conditions, and things whatsoever, which were to be by them fulfilled, done, or performed under or in conformity with the said deed of July 1, A. D. 1850, stated either by way of rental or otherwise, have bargained, sold, remised, released, and forever quitclaimed, and these presents do bargain, sell, release, and forever quitclaim the undivided twenty-six one hundredths ($\frac{26}{100}$) equal parts of all their rights, titles, interests, estate, claims, and demands of and in all the said tract or parcel of land hereinafter particularly described and set forth, to wit: Commencing on the north of the three peaks, or what is commonly known as the Sutter's Buttes, at a point on the east bank of the Sacramento river, known in latitude thirty-nine degrees, fifty-one minutes, forty-five seconds; thence running with the parallel of said latitude to the Rio de los Plumas, or Feather river; thence down and along the meanderings of the Rio de los Plumas, or Feather river, to its junction with the Sacramento river; thence up and along the east bank of said Sacramento river to the place or point of beginning—excepting and reserving therefrom, and from the operations of this conveyance, the tract of land known as the "Hock Farm," and that known as the "Yuba City Tract," and also such tracts or pieces of land heretofore sold and conveyed or contracted to be sold and conveyed by said Robinson, Fowler, Gillespie and McDougal, and also all the right, title, estate, claim, and demand whatsoever, which the said parties of the first part have, hold, or claim, either in possession or expectancy, of, in, and to any and all other tracts or parcels of land lying and being situate in the State of California, of and in which the said parties of the first part may have become interested, possessed, seized, or entitled under or in virtue of the said deed from the said Sutter, and Ann, his wife, to said Robinson, Gillespie, Fowler and McDougal, bearing date July 1, A. D. 1850; to have and to hold said

lands and real estate, and all the right, title, estate, claim, and demand therein of the said parties of the first part hereby bargained, sold, remised, released, and quitclaimed unto the said party of the second part, his successors and assigns, in trust to and for the several uses, interests, and purposes hereinafter mentioned, namely: First—In trust, to lease the same or any part thereof, and to take, collect, and receive the rents, issues, and profits thereof; to sell and convey the same or any part thereof to such person or persons, and for such price or sum of money as to him shall seem meet; subject, however, to the appeal of said John A. Sutter. Second—In trust, to apply the rents, issues and profits thereof and proceeds of the sales aforesaid: 1st. To the payment of the taxes and assessments and legal charges thereon; 2d. To the care, protection and preservation thereof, and to the prosecution of such suits and actions as may become necessary or proper in relation thereto, and to the defense of such suits or actions as may be brought in relation thereto against the said John A. Sutter, or those claiming under him, or in any way prejudicial to the right, title, estate hereby bargained, sold, remised, released and quitclaimed; 3d. To pay any just debts against the said John A. Sutter; 4th. To pay over the residue of such rents, profits, and proceeds of sales to the said John A. Sutter, his heirs and assigns, to his and their use and benefit. And the party of the second part covenants to faithfully fulfill and perform the trusts herein created.

"In witness whereof, the said parties of the first part, and the said parties of the second part, have hereunto set their hands and seals, the day and year first above written.

"HENRY E. ROBINSON,    [L. S.]
JOHN S. FOWLER,    [L. S.]
EUGENE F. GILLESPIE,  [L. S.]
JOHN McDOUGAL,    [L. S.]
WAKE BRIERLY,    [L. S.]
LEWIS SAUNDERS, JR.    [L. S.]"

The defendants claimed under Sutter, but not through Saunders.

The plaintiff recovered judgment in the Court below, and the defendant appealed.

The other facts are stated in the opinion.

*Beatty & Denson,* for the Appellants, argued that there was no evidence that the legal title to the demanded premises, passed to Saunders; that the terms of the trust were, that Saunders should lease the lands, collect the rents, sell the land subject to the appeal (doubtless a clerical error for approval) of John A. Sutter, and apply the proceeds to the payment of taxes, preservation of the land, payment of Sutter's debts, and lastly, pay the residuum to Sutter himself; that having then, on the lands derived from Robinson and others, a mere naked trust, which he could not legally transfer to another, and no right to sell this land, except subject to the approval of Sutter, and then only for Sutter's benefit, the conveyance to Tevis would be held not to affect the trust estate; that the deed was a lawful instrument, conveying what he had a right to convey, to wit: his own individual interest in lands, and not affecting the trust property, which, of course, could only be sold for Sutter's benefit, and with his approval; that if intended to convey the trust property, it could not take effect on that property in the face of the restriction that sales thereof must be made subject to the approval of Sutter; that if Sutter had to approve the sale, it should have been shown by lawful evidence that he had approved the transfer to Tevis, before it could become operative, and that no proof of this kind being offered, the deed should have been excluded, or being admitted, it proved nothing.

*M. Bergin,* also for the Appellants, argued that from the recitals in the deed to Saunders, it was evident that it was made to protect Sutter's interests in the property, and to enable him to prevent future sales from being made without his consent.

*H. P. Barbour,* also for the Appellant, made the same point.

*A. P. Catlin,* for the Respondent, argued that the deed of

L. Saunders, Jr., to Lloyd Tevis conveyed the legal title to the demanded premises, and cited, *Johnson* v. *Fleet*, 12 Wend. 602; 2 Crabb on Real Prop., p. 390, note *l*, and authorities there cited. That the deed of Robinson and others to Saunders contained no restriction upon the power of Saunders to sell and convey. The deed itself did not provide for the approval of Sutter, and the word "approval" could not be arbitrarily substituted for "appeal," contained in the deed; and cited, *Hagler* v. *Simpson*, 1 Busbee, N. C. 384; and that even if the word "approval" had been used, a conveyance could not be approved until made; and in the absence of proof of disapproval, the approval would be presumed; and cited 12 Wend. 671, 676; and that in this action such an objection could not be made; and cited *Lessees of Bayard* v. *Colfax et al.*, 4 Wash. Reports C. C. U. S. 38, 42.

*R. C. Clark* & *A. P. Catlin*, also for Respondent, argued that as the appellants did not claim under Saunders, they could not call him to account for his acts as trustee, nor attack his deed collaterally; and cited, *Winans* v. *Christy*, 4 Cal. 70; *Milton* v. *Palmer*, 39 Cal. 453; *Broadstreet* v. *Clark*, 12 Wend. 602; *Schenck* v. *Ellingwood*, 3 Edward Ch. 175, and *Brown* v. *Lipscomb*, 9 Porter, 472.

They also argued, that the Court could not substitute "approval" for "appeal" and cited 2 Parsons on Cont. 496; *Hagler* v. *Simpson*, 1 Busbee N. C. 384.

By the Court, CROCKETT, J.:

The demanded premises are included within the grant of June 18, 1841, from the Mexican Government to John A. Sutter, and which has been finally confirmed, located and patented. The plaintiff's chain of title consists: First, of a deed from Sutter and wife to Robinson and others, dated July 1, 1850; second, a deed from Robinson and others to Saunders, dated June 23, 1855; third, a deed from Saunders to Tevis, dated July 23, 1864; fourth, a deed from Tevis to the plaintiff, dated July 3, 1869. I shall assume for the purposes of this decision (without,

however, expressing any opinion on the point), that the deeds from Sutter and wife to Robinson and others, and from the latter to Saunders, were effectual in law to vest in Saunders the legal title to the land in controversy; and that the deed from Tevis to the plaintiff conveyed to the latter whatever title Tevis acquired under the deed from Saunders. The remaining inquiry on this branch of the case is, whether the deed from Saunders to Tevis was operative in law to vest in him the legal title to the demanded premises; for the legal title only is in issue in this action. The plaintiff counts upon a title in fee, and the answers do not set up any equitable defense whatever, and put in issue the legal title only. The legal effect of the deed from Saunders to Tevis must be determined by the instrument itself, construed in the light of the surrounding circumstances. The deed from Sutter and wife to Robinson and others, after reciting Sutter's title to the large tract situate between the Sacramento and Feather rivers, also recites that his possession had been invaded by numerous persons who deny his right and title to the possession, and that these unlawful acts have caused him great annoyance. Under these circumstances he conveys the whole tract, with certain reservations, together with all the other lands in the State to which he and his wife were entitled, to Robinson and others, who on their part undertook at their own expense to protect his title and possession, and to pay over to him one sixth part of all the proceeds of sales of the land. The deed from Robinson and others recites that differences and controversies had arisen between themselves and Sutter in respect to the manner in which they had performed their covenants contained in the deed from Sutter and wife, of July 1, 1850, and that for the purpose of ending these controversies it had been mutually agreed that they would convey to Saunders, 'in trust for Sutter, twenty-six-one-hundredths of the tract situate between the Sacramento and Feather rivers, and also the whole of all the other lands conveyed to them by Sutter and wife, excepting, however, from the conveyance such lands as had been sold and conveyed by

Robinson and others. Sutter, on his part, agreed to release his claim or title to seventy-four one-hundredths of the tract situate between the Sacramento and Feather rivers, with certain reservations, and also to release Robinson and others from a further performance of their covenants. These facts appear on the face of the conveyances. The deed to Saunders recites a nominal consideration of one dollar only, and is made upon the express trust that Saunders will rent, lease or sell the lands conveyed to him and receive the proceeds thereof, out of which he shall pay: First, the taxes, assessments and charges upon the land; second, the expense of maintaining and defending actions concerning the land; third, any debts that may be due and owing from Sutter to any person whatever; fourth, the remainder, if any, to be paid to Sutter. That clause of the deed which authorizes Saunders to sell and convey the land concludes in these words: "Subject, however, to the appeal of the said John A. Sutter." It is contended on behalf of the defendants that the word "appeal" in this sentence is evidently a mere clerical error for the word "approval;" that the error is manifest from the face of the deed itself, and that the instrument should be read as if the word "approval" were substituted for "appeal." Upon this reading of the deed they claim that Sutter's approval of all sales and conveyances to be made by Saunders was a condition precedent, without the performance of which Saunders had no power to sell or convey. On the other hand, the plaintiff insists that the word "appeal" as here used is meaningless, and must be disregarded; that the Court has no power to substitute another word or sentence for a meaningless phrase employed in the instrument; but that, even though Sutter's consent be deemed a condition precedent, his consent will be presumed after so great a lapse of time. In general, doubtful clauses in a deed are construed most strongly against the grantor, and as favorably to the grantee as the language will permit. The same rule holds good as between a trustee of an express trust, having no interest in the trust fund, and the *cestui que trust*. In such cases doubtful clauses in the

instrument creating the trust, are construed strictly as
against the trustee acting under a power, and most favor-
ably to the beneficiary under the trust.   In this case
Saunders paid nothing for the property, and had no inter-
est in the trust fund, there being no provision in the deed
even for his compensation as trustee.   He held the title
for the exclusive benefit of Sutter, who was the only real
party in interest under the deed to Saunders as his trustee.
As between Sutter and Saunders, the powers of the latter
are to be strictly construed, and in performing the trust he
could not transcend the authority conferred upon him.   In
construing the phrase, "subject, however, to the 'appeal'
of the said John A. Sutter," we must look to the circum-
stances under which it was inserted in the deed, and must
give some effect to it, if practicable.   When it is remem-
bered that in the deed to Robinson and others, Sutter had
conferred upon them somewhat similar powers in respect
to the management and disposition of his large landed es-
tate, and that serious controversies had arisen in respect
to the manner in which they had performed their trust, the
presumption is strong that in selecting a new trustee to
manage and dispose of his estate, he would impose upon
him such restrictions as would prevent an abuse of his
powers.   That the words already quoted were inserted for
that express purpose, and were intended to limit and
qualify the power of the trustee over the estate, can admit
of no reasonable doubt.   Following, as they do, immedi-
ately after the power of sale conferred upon the trustee,
they were obviously intended to limit his absolute power
of disposition, and to render it necessary that Sutter's con-
sent should be had before his whole estate was disposed
of.   It is true the word "appeal" is not the most apt word
that could have [been] selected to express this meaning,
and I. have but little doubt, that through a mere clerical
error, it was inserted by mistake for the word "approval."
But whether this word was used through inadvertence, or
from an ignorance of the proper meaning of the word, it is
apparent, I think, not less from the context than from the
previous recitals in the deed and all the circumstances sur-

rounding the transaction, that the word "appeal," as here used, was intended to be synonymous with "approval." It is not the practice of Courts of Justice to divest persons of their estates by a rigid adherence to the rules of grammatical construction, or by a strict interpretation of the language of an instrument, when the sense in which the words were used is apparent from other portions of the instrument, viewed in the light of the attending facts. The sole object to be attained in the construction of contracts is to ascertain the real intention of the parties; and with this view the whole contract and all its provisions, together with the relations of the parties towards each other, will be considered; and effect will be given to the intent thus ascertained, however clumsily the instrument may be worded, and however grossly it may violate the strict rules of grammatical construction. (*Racouillat* v. *Sansevain*, 32 Cal. 376, *Hancock* v. *Watson*, 18 Cal. 137; *McNeil* v. *Shirley*, 33 Cal. 202; *Saunders* v. *Clark*, 29 Cal. 299; *Brannan* v. *Mesick*, 10 Cal. 105, 106.) Tested by the rules of construction adopted in these cases, there can be no doubt, I think, that the approval of Sutter was a condition precedent to the exercise of the power of sale and conveyance conferred upon Saunders, and that the latter had no power to sell or convey the land without the previous consent of Sutter. His consent must be affirmatively shown, and will not be presumed. (Hill on Trustees, 4th Am. Ed. 747, and cases cited; *Sympson* v. *Hornsby*, Prec. Ch. 474; *Barber* v. *Cary*, 1 Kernan, 397; *Greenhan* v. *Gibbenson*, 10 Bing. 363; *Wright* v. *Wakeford*, 17 Ves. 454; *Warburton* v. *Farn*, 16 Sim. 625.) There being no proof in this cause, that Sutter has at any time consented to or approved of the conveyance to Tevis, the deed from Saunders was inoperative to convey the title which he held in trust; and the plaintiff therefore acquired no title under his deed from Tevis.

Judgment reversed and cause remanded for a new trial.

The foregoing opinion was delivered at the January term, 1872, and a rehearing having been granted, the following opinion was delivered at the April term, 1874.

Points decided.

By the Court, RHODES, J.:

Assuming that the deed of Robinson and others to Saunders, conveyed to the latter the legal title to the premises, the question presented for consideration, is whether the legal title passed by the deed of Saunders to Tevis. This involves the construction of the clause in the deed of Robinson and others to Saunders, to the effect that the latter was thereby empowered to sell and convey the lands, "subject, however, to the appeal of said John A. Sutter." The opinion heretofore delivered on that question will stand as the opinion of the Court. The word "appeal," was inserted, we think, by a clerical error, for the word "approval," and will be so read in an action at law, and resort need not be had to a Court of equity, for a reformation of the instrument in that respect. The deed of Saunders to Tevis, without the approval of Sutter, would not pass the legal title to the lands. The approval of Sutter must be shown, and as the title would not pass without such approval, the approval must be in writing.

Judgment and order reversed, and cause remanded for a new trial. Remittitur forthwith.

Mr. Justice McKINSTRY did not express an opinion.