## THE PEOPLE *v.* ROSADO.

### APPEAL from the District Court of Ponce.

#### No. 258.—Decided April 12, 1911.

EVIDENCE—CONFESSION OF ACCUSED.—The extrajudicial confession of the accused is admissible in evidence against him if it has been made voluntarily, without violence, intimidation, threats, inducements, or promises of any kind which might influence him.

ID.—CORPUS DELICTI—MURDER.—In cases of murder the confession of the accused does not constitute evidence of the *corpus delicti,* nor can it be admitted as evidence tending to prove the guilt of the accused when the existence of the crime has not been established by evidence of another character.

ID.—INSTRUCTIONS OF COURT—VOLUNTARY AND INVOLUNTARY HOMICIDE—APPEAL.—When the evidence taken clearly establishes the crime of murder it is not necessary to instruct the jury with reference to the crime of homicide,

but even where the court should so charge the jury the omission to do it would not justify the reversal of the judgment, it being a general rule that where the accused believes that the court should instruct the jury on a material question he must request such instruction, and enter an exception in case of its being denied, so as to be able at the proper time to attack the instruction as deficient.

ID.—CASES WHERE THE KILLING IS OCCASIONED WHILE PERPETRATING OR ATTEMPTING TO PERPETRATE A ROBBERY.—If the killing is consummated while perpetrating or attempting to perpetrate a robbery, then there is no need of proving deliberation and premeditation, for, if such condition is substantiated, the murder must perforce be of the first degree, and a charge to that effect is no error.

ID.—EXTENUATING CIRCUMSTANCES, OR SUCH AS EXCUSE OR JUSTIFY THE DEED.—The extrajudicial confession of the accused in this case being to the effect that he had killed the victim in *self-defense*, as the jury has a right to accept or reject such exculpation, a charge of the court lies to the effect that, once proven that the killing was done by the accused, the proof of extenuating circumstances or of such as excuse or justify the deed devolves upon him, unless the evidence of the prosecution should show that the crime is one of homicide.

ID.—INSTRUCTIONS ON IRRELEVANT POINTS.—The fact that the jury was instructed on points not pertinent to the case under consideration would never constitute an error sufficient to justify the reversal of the judgment where it appears that the rights of the accused have not been prejudiced.

ID.—CIRCUMSTANTIAL EVIDENCE.—With respect to the following instruction it is held that the jury could not have been induced into error in the consideration of the evidence: "This evidence (the circumstantial) may consist in admissions made by the accused * * *, and, finally, any act, declaration, or circumstance admitted in evidence tending to connect the accused with the commission of the crime. The court instructs the jury that in order to declare the accused guilty on circumstantial evidence alone it is necessary not only that all the circumstances should concur to show that he committed the crime of which he is accused, but that they are incompatible with any other reasonable conclusion."

ID.—CONSIDERATION OF THE EVIDENCE.—The jury is the only judge of the facts and of the veracity of the witnesses. They see them and hear them testify and they alone can judge as to their credibility, and only in exceptional cases, as when a jury commits manifest abuses of power in this respect, shall the trial court or the Supreme Court quash the verdict and grant a new trial. A charge upon the powers of the jury in this sense is correct.

ID.—REASONABLE DOUBT.—The following instruction is held to be correct: "Reasonable doubt is that state of the cause which, after having collated and considered all the evidence taken, leaves the person in such a state of mind as to preclude his being convinced about the truth of the accusation."

ID.—"If you have a reasonable doubt that the accused is guilty of the crime of murder in the first degree or second degree, then it is your duty to find him guilty of murder in the second degree." *Held:* That such instruction is not erroneous, it being impossible to construe it as is done by counsel for the accused, namely, that if the jury had doubts as to the guilt of the accused it should have found him guilty of murder in the second degree, for

such construction is in conflict with the logical and natural meaning of said instruction and with the other instructions of the court to the jury, the purport being clear and manifest that, if the jury had any doubt *as to the degree* of the crime, it should find the accused guilty in the second degree.

The facts are stated in the opinion.

*Mr. Rafael Martínez Dávila* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

The present case originated and was decided in the District Court of Ponce, with which the district attorney of said court filed, on January 6, 1908, an information against Juan Rosado Colón, charging him with the crime of murder in the first degree, committed as follows:

"The said Juan Rosado Colón, on the night between Sunday the 8th and Monday the 9th of December, 1907, on the highway leading from Guayama to Ponce, in *barrio* Arús, within the municipality of Juana Díaz, judicial district of Ponce, P. R., *with malice aforethought, treacherously and deliberately, and evincing a perverted and malignant heart, did unlawfully put to death Francisco Cruz y Rivera, known as 'Frisco,'* with the intention of robbing him of the money he had, by inflicting upon him with a blunt instrument a wound on the right fronto-temporo parietal region, accompanied by a comminuted fracture of said region, with a sinking of the fractured bones, which caused his death, and many other wounds of a similar nature on the face and superior right frontal region."

The trial having been held, the accused was found guilty and sentenced to death for the crime of murder in the first degree, but from said sentence he took an appeal to this Supreme Court, which reversed it, by its judgment of November 4, 1909, ordering a new trial to be held.

The new trial was had on February 24, 1910, the jury rendering the following verdict:

"In the District Court of the Judicial District of Ponce, P. R., *The People of Porto Rico* v. *Juan Rosado Colón.* Murder in the first degree. *Verdict.* The jury, after deliberating on this case, renders its verdict finding the defendant, Juan Rosado Colón, guilty of the

crime of murder in the first degree. Ponce, P. R., February 24, 1910.
S. Barnés, Forman of the Jury.''

In view of the aforesaid verdict the court declared Juan Rosado Colón guilty of the crime of murder in the first degree, and on the 28th of the same month rendered judgment sentencing him to death.

From that judgment the defendant took an appeal, and the transcript of the record having been forwarded, as the period had expired without his appearing, this court designated as his counsel Attorney Rafael Martínez Alvarez, who, with true zeal, proceeded to discharge his noble commission by filing a brief and presenting oral arguments in support of the appeal taken.

The representative of the appellant bases the appeal on the following grounds:

''That the verdict is contrary to the evidence taken, there being, consequently, error in the consideration thereof.

''That there has been the same error in the charge of the court to the jury, and that the verdict rendered by the jury is an informal verdict.''

As a summary of the considerations made by the appellant in developing the first ground of the appeal, we take from his brief the following:

''As has been seen, the only evidence against the defendant on which the accusation is based consists of the alleged confession of the defendant made to the witnesses mentioned and it is a very general and elemental principle that the *corpus delicti* must be established before the confessions of the accused can be considered as tending to demonstrate the fact or act to which they are related. Confessions alone are not sufficient for the purpose of establishing a crime. In cases of murder the production of the corpse does not establish *per se* the *corpus delicti;* it may establish the body of the offense, but not the offense, and proofs of the body without proofs of the crime, joined to the confessions of the defendant, are not sufficient to determine a conviction, inasmuch as other evidence must exist showing the commission of the crime before the confessions of the defendant can be of any use. There is no doubt that the appearance of the corpse,

the nature of the wounds, the presence or absence of evidence of a struggle, the circumstances surrounding the event, may indicate that a crime has been committed; but evidence of a nature entirely distinct from the confession of the accused must be produced to establish the crime independently of the corpse and which may connect the defendant with the crime. There is nothing in the record tending to show that the defendant committed the crime wherewith he is charged except his aforementioned confession, wherefore it is certain that the jury considered the confession in determining whether or not the *corpus delicti* had been sufficiently proven, which is erroneous."

The foregoing allegations tend to demonstrate that there has been a violation of section 206 of the Penal Code, which reads:

"No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of the killing by the defendant as alleged, are established as independent acts; the former by direct proof and the latter beyond a reasonable doubt."

These provisions have had full application in the present case, for the death of Francisco Cruz Rivera appears to have been established by direct proof and the responsibility of the defendant as principal therein has been shown, leaving no room for any reasonable doubt.

To show this, let us go over the evidence.

On Saturday, December 7, 1907, Francisco Cruz, who lived in *barrio* Capitanejo, of Ponce, being in charge of an oxcart belonging to Antolina Lao, with which he made trips from Ponce to Guayama, went to Ponce for some provisions and returned to Antolina's house, where he lived, between 2 and 3 p. m., with the cart loaded. He set out on the same evening for Guayama, but failed to return on Monday morning, as he was in the habit of doing.

Antonio Grau, a merchant of Guayama, received the provisions brought in the cart by Francisco Cruz from Ponce between 8 and 9 a. m. of the following day—December 8th aforesaid—and paid him $5 for the cartage in the presence

of a boy who acted as his assistant, and looked like the defendant.

Between 10 and 11 of the same day (December 8) Francisco Cruz and the defendant were in Lino Mandrí's café in Guayama, where both took coffee which Cruz paid for, and then they set out for Ponce with the empty cart, there having been no quarrel between them.

At about 4 p. m. of the same day (December 8) Juan Cruz Franco, who was in *barrio* Coquí of Salinas, where he did duty as Insular policeman, saw the defendant, in company with a cartman, enter an inn where they had their meals together, the cartman paying.

On the night of the same December 8, between 7 and 8 o'clock, the defendant and Francisco Cruz were eating at the inn of José de Jesús Burgos in Santa Isabel, the expenses there being also paid by Cruz. When they finished their meal they got on the cart and continued on their way to Ponce without having had any quarrel.

Elena Torres was the person who served supper to Francisco Cruz and the defendant in the eating house at Santa Isabel.

On the morning of the following day (December 9) Lieutenant José C. Jiménez, of the Insular police, on duty in Juana Díaz, was informed that in *barrio* Arús, just in front of the estate known as "La Potala" and near the highway, a corpse was lying. He notified Justice of the Peace Monclova, and at the place mentioned the body of Francisco Cruz was found lying on its back, with head and face completely crushed, and the left pocket of his breeches inside out and hanging by a thread. By the side of the pocket one cent was lying.

Dr. Ramón A. de Torres dissected the body and, according to expert opinion, the deceased must have received from eight to ten or twelve blows in order to produce the demolition appearing in the region of the face, which was beaten into a shapeless mass, with all the teeth out. All the wounds

were necessarily mortal, being caused by a blunt body of very solid texture, such as a stake. There was no struggle between the aggressor and his victim, for in that case the corpse would have shown spots of blood on the hands or on the body.

In the cart, which was of two wheels and stakes, there was a *machete* (cutlass) and a *garrocha* (goad); and the stake known as *la confianza* (the reliance), which is stout, short, armed with an iron hoop, and is used to tighten the others, was missing.

Dr. Torres does not believe that the injuries were caused by the goad above referred to but with a hard and thick body, such as a stake.

A few days after the finding of the body Juan Rosado Colón was detained as a suspect. After having denied that he knew the cartman, Francisco Cruz, and had been with him in Guayama, he informed Lieutenant Jiménez that he had something to tell him, which was to the effect that he had struck the cartman with a goad because the latter had tried to beat him when leaving Santa Isabel, and this he had done in self-defense.

The defendant had also told Rosendo Quesada, when asked by the latter why he had killed the cartman, that he had done it in self-defense. To Pedro Iglesias González, a reporter of the newspaper *The Eagle,* of Ponce, who had put the same question to him, the defendant replied that the cartman was drunk and kept provoking him, and that, losing his patience, he had seized a stake and struck him with it several times. Pedro Monclova heard the defendant's statement to the effect that he had struck the cartman because the latter had tried to beat him, and that he had done so in self-defense with a goad.

As we see, the death of Francisco Cruz Rivera was proven by the discovery of his corpse in the manner above described, independently of all other evidence relating to the responsibility of the defendant. That the motive determining the

killing was robbery is indicated by the fact that Francisco Cruz had received in Guayama from Antonio Grau $5, which have not appeared and which undoubtedly were abstracted from one of the pockets of his breeches—a pocket which had been almost torn off, as shown by an examination of the corpse. That Juan Rosado Colón is the one responsible for the crime committed on the person of Cruz is revealed by the fact that they had been traveling together on the night Cruz was killed and by the extrajudicial confession of the defendant, admissible in evidence because made voluntarily, without violence, intimidation, threats, inducements, or promises of any kind that could have influenced the same.

We admit that confession does not constitute proof of the *corpus delicti* in cases such as the one under consideration, nor can it be admitted in evidence against the defendant when the fact of the crime has not been established by proof of another nature, for so it is required by section 206 of the Penal Code; but such legal doctrine cannot be successfully invoked in the present case, in which the death of Francisco Cruz has been proven by the discovery of his corpse and not by confession of the defendant.

Hence, there has been no error in the consideration of the evidence, and it must be admitted that the verdict of the jury has been impartial and just.

The appellant alleges in support of the second ground of his appeal that the judge erred in not instructing the jury upon voluntary and involuntary manslaughter. From the examination we have made of the evidence taken it appears that such instruction was unnecessary in this case inasmuch as the evidence clearly establishes the crime of murder, and we fail to see how a verdict of manslaughter could have been rendered. (*People* v. *Haun,* 44 Cal., 100; *People* v. *Ah Wee,* 48 Cal., 239.) But even allowing that the court should have instructed the jury with reference to manslaughter in the two classes thereof, its failure so to do would not justify the reversal of the judgment since it is a general rule that where

the defendant believes that the court should instruct the jury on a material question, he must request such instruction and enter an exception, should his request be denied, so as to enable him at the proper time to attack the instructions as deficient. (*People v. Robles,* decided Apr. 25, 1906 [P. R., p. 470]; *People v. Morales, alias "Yare Yare,"* decided June 30, 1906 [P. R., p. 294]; *People v. Haun,* 44 Cal., 100; *People v. Ah Wee,* 48 Cal., 239; *People v. Northey,* 77 Cal., 632; *People v. Fice,* 97 Cal., 460.)

It is also alleged that the judge erred in giving the jury the instructions transcribed below:

"(a) Now, when the killing is consummated while perpetrating or attempting to perpetrate a robbery, then there is conclusive evidence of premeditation and deliberation on the part of the killer.

"And if the killing has been voluntarily, deliberately, and premeditatedly consummated, the course to pursue is determined by the code itself, and the jury has no alternative but to find the defendant guilty of murder in the first degree.

"(b) In trials for murder, when once it has been proven that the killing was done by the defendant, it would devolve upon the defendant to prove that there have been extenuating circumstances or such as excuse or justify the act unless the evidence presented by the prosecution should tend to show that the crime committed was only one of manslaughter. But the defendant shall be obliged to produce such evidence only as may awaken in the mind of the jurors a reasonable doubt as to his guilt.

"(c) This evidence (circumstantial) may consist in admissions made by the defendant * * * and, finally, any act, declaration, or circumstance admitted in evidence tending to connect the defendant with the commission of the crime.

"(d) The court charges you, gentlemen of the jury, that you are the only judges as to the veracity of the witnesses and the weight and value to be attached to their testimony. In determining the credit you should give to the testimony of a witness and the weight and value to be attached to his statement you should take into account the conduct and appearance of the witness when he is testifying.

"(e) A reasonable doubt is a doubt based upon some reason; it is a doubt for which the jury must give and have a reason.

"(f) If you have a reasonable doubt as to whether the defendant

is guilty of the crime of murder in the first degree or second degree, then it is your duty to find him guilty of murder in the second degree.''

We do not find that the court erred in giving to the jury the instruction marked ''*a*,'' for from the terms thereof it does not appear, as claimed by the appellant, that such instruction was given on the supposition that the robbery had been proven. Far from this, said instruction is not absolute, but hypothetical; it refers to the case where the killing is committed in the perpetration or attempt to perpetrate robbery; and where such a condition is realized the murder must necessarily be of the first degree, according to section 201 of the Penal Code. It is to be noted that immediately after charging the jury the judge instructed the jurors as to the elements constituting the crime of robbery, and in his instructions regarding consideration of the evidence the following appears: ''This defendant is held to be innocent as long as his guilt is not established beyond all reasonable doubt; and in case there should be any doubt as to his guilt, it is the duty of the jury to acquit him.'' In view of such clear and explicit language it cannot be maintained that the judge had presumed, and that the jury had taken for granted, the attempt to commit robbery, or the consummation thereof, in depriving Francisco Cruz of his life.

Nor is the instruction marked ''*b*'' erroneous for the reason alleged, namely, that the defendant had failed to offer any evidence or defense involving an excuse or justification of the act imputed to him.

True, the defendant did not establish any defense which made such instruction necessary; but as one of the most important proofs presented at the trial was the defendant's own extrajudicial confession in admitting before several witnesses who testified at the trial that he had killed Cruz in self-defense, we must recognize the right of the jury to accept or reject such exculpation, and hence that the judge's conduct was correct in charging the jury with respect to this

particular, his charge being in accord with the prescription of section 247 of the Code of Criminal Procedure. Moreover, the fact of instructing the jury upon points not pertinent to the case under consideration would never constitute an error sufficient to justify the reversal of the judgment when it appears that the rights of the defendant have not been impaired.

In considering instruction letter "*c*" we must do so with reference to the one preceding it, dealing with the classification of the evidence. "There exist," said the judge, "two classes of evidence recognized and admitted by courts of justice, and on the strength of any of which juries may find a defendant guilty of a crime. One of these is the direct or positive testimony of an eye-witness with respect to the commission of a crime; the other evidence being through the testimony of a series of events interwoven together tending to point, in a sufficiently powerful manner, at the commission of a crime by the defendant, such evidence being known as circumstantial evidence. This evidence may consist in admissions made by the defendant; threats made prior to the commission of the crime tending to show that on his part there existed animosity against the deceased, and, lastly, any act, declaration, or circumstance admitted in evidence which tends to connect the defendant with the commission of the crime. There is nothing in the nature of circumstantial evidence which renders it less reliable than the other class of evidence. The court instructs the jury that in order to find the defendant guilty on circumstantial evidence alone it is not only necessary that all the circumstances should concur in showing that he committed the crime wherewith he is charged, but that said circumstances are inconsistent with any other reasonable conclusion. It is not sufficient that the circumstances proven coincide, agree, and make probable the hypothesis sought in order to establish the object of the accusation, but they must exclude any hypothesis other than that of guilt."

We do not see how, in view of such judicious explanations, the jury could have been led into error in the consideration of the evidence by reason of the instruction which the appellant designates as erroneous. That the confession of the defendant made before witnesses was admissible as evidence is a legal point heretofore decided by this court in the affirmative upon disposing of the cases of *The People* v. *Rivera, The People* v. *Kent, The People* v. *Martínez et al.,* and ·*The People* v. *Flores Casiano,* decided, respectively, June 25, 1904, March 5, 1906, December 4, 1909, and February 14 of the present year. And we advert to that legal point because, as appears from the statement of the case, exceptions were taken at the trial to the testimony of the witnesses who deposed with respect to the declarations made before them by the defendant, although in this Supreme Court such exceptions have not been sustained as ground of the appeal.

Instruction letter "*d,*" far from being erroneous, is upheld by section 265 of the Code of Criminal Procedure, inasmuch as it provides that issues of law shall be decided by the court and issues of fact by the jury.

"The jury is the only judge of the facts and of the veracity of the witnesses. They see them and hear them testify, and are the only ones who can judge as to their credibility, and only in exceptional cases, of which there are few examples, when a jury commits a manifest abuse of power in this respect, will the trial court or the Supreme Court set aside the verdict and grant a new trial." So we said in deciding, on May 5, 1904, the case of *The People* v. *Villegas,* and the instruction to which we have been referring also conforms to this doctrine. But this instruction, in order to be estimated, must be considered in its entirety, or as it was given to the jury, in which form it reads: "In determining the credit you are to give to a witness and the weight and value to be attached to his testimony you must take into account the conduct and appearance of the witness when he is testifying; the interest, if any, the witness may have in the result

of the trial; the motives of the witness in testifying; the rela-
tion of the witness or his feelings in favor or against the
defendant or prejudiced party; the probability or improba-
bility of the statements of the witness; the opportunity the
witness had to observe and be influenced upon matters with
respect to which he testifies, and the inclination of a witness
to speak the truth. It devolves upon you to take all this
into account, together with the facts and circumstances of-
fered in evidence, so as to give to each witness such credit
and to his testimony such value and weight as you may deem
proper." The instruction was complete, and the defendant
cannot find any fault with it.

Instruction letter "*e,*" explaining what should be under-
stood by reasonable doubt—that is, a doubt for which the
jury should give and have a reason—must be completed with
the words which preceded it and were said by the judge: "A
reasonable doubt is that state of the cause which, after hav-
ing collated and considered all the evidence taken, leaves the
juror in such a state of mind as to preclude his being con-
vinced with respect to the truth of the accusation." This
instruction is correct, and if it appeared defective to the
defendant he might have requested an elucidation thereof at
the proper time, which he failed to do, for the purpose of
filing, when the occasion arose, an exception to the decision
of the court and base thereon the appeal.

Finally, neither do we find any error in instruction letter
"*f,*" for it is not possible to construe it as is done by counsel
for the defendant, namely, in the sense that if the jury had
doubt as to the guilt of the defendant it must find him guilty
of murder in the second degree. This construction is in con-
flict with the logical and natural sense of the instruction and
with the other given by the judge to the jury to the effect
that if it had any reasonable doubt as to the guilt of the
defendant it must render a verdict of not guilty, it thus
clearly appearing that the meaning of the instruction was
that if the jury had doubt as to the murder wherewith the

defendant was charged being of the first or second degree, it must find him guilty of murder in the second degree. Wherefore the error pointed out does not exist in the instruction.

For the reasons above set forth we are of the opinion that the judgment appealed from should be affirmed.

*Affirmed.*

Justices MacLeary, Wolf, and del Toro concurred.

Mr. Justice Aldrey did not take part in the decision of this case.