CASTLE, Respondent, v. GLEASON, Appellant.

(141 N. W. 516.)

1. **Evidence—Parol to Vary Instrument—Reformation.**

Parol evidence to change chattel mortgage of crops, as to the crop year mentioned therein, is inadmissible, unless a reformation of the mortgage is sought.

2. **Evidence—Parol to Vary Instrument—When Admissible.**

One seeking to recover on a written instrument must rely on it as executed, or must seek reformation thereof.

3. **Reformation of Instruments — Evidence — Grounds—"Clerical Error."**

A "clerical error" in an instrument, within the rule that mere clerical errors are not subject to reformation in equity, is an error appearing to be such on the face of the instrument, and the nature of which is ascertainable therefrom; and such an error may be remedied by enforcement of the contract without reformation of the instrument. Held, further, that it is only when the instrument of contract, taken as a whole, fails to record the parties' agreement, that reformation can be had.

4. **Evidence—Clerical Error—Reformation of Instrument—Mistake in Year.**

The error in a chattel mortgage of crops, arising from the fact that the year 1912 was stated, while, as alleged, the year 1911 was intended, is not a clerical error, and the mortgagee cannot recover for conversion of the 1911 crops without procuring a reformation of the mortgage and proving that the third person converting the 1911 crops to his own use had notice of the error in the mortgage.

. (Opinion filed May 24, 1913.)

Appeal from Circuit Court, Union County. Hon. JOSEPH W. JONES, Judge.

Action by W. D. Castle against John Gleason, for the value of alleged mortgaged crops converted by defendant. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*R. W. Ellis,* and *W. E. Gantt,* for Appellant.

In this case the mortgage clearly fixes the year as that of 1912. Such a mortgage is not the basis of proof that the mortgage was to cover the crop of the year 1911. 22 Enc. Pl. & Pr. 527; Robinson v. Kilpatrick Dry Goods Co., 50 Neb. 795, 70 N. W. 378; First Nat. Bank v. Hamer, 47 Fed. 36; Bromley v. Goff, 75 Mich. 213, 42 N. W. 810.

The plaintiff on the trial offered testimony to the effect that the writing of the year "1912" was a clerical error, the intention being to write "1911." · This testimony was obected to as parol testimony offered to contradict the terms of a written instrument, and such objection should have been sustained. Tossini v. Donahoe, (S. D.) 117 N. W. 148; Barnard v. Colonial & U. S. Mtg. Co., (S. D.) 105 N. W. 737; Bowen v. Mutual Life Ins. Co., (S. D.) 104 N. W. 1040; Anderson v. Matheny, (S. D.) 95 N. W. 911; and see Section 1239, Code of 1903.

Plaintiff must have a reformation of such mortgage in order to enable him to recover. MacVeagh. v. Burns, 2 S. D. 83, 48 N. W. 835; Tossini v. Donahoe, (S. D.) 117 N. W. 148; Forester v. Van Auken, 12 N. D. 175.

A clerical error is one which can be detected without the aid of extrinsic evidence. Hughes v. Payne, (S. D.) 117 N. W. 363.

*Thomas McInerny*, for Respondent.

1.   The instrument shows upon its 'face that it was designed and intended for, and is a mortgage upon the crop to be grown in the year 1911, and that the writing of the figure 2 in place of the figure 1, thus making it read crop of 1912, is clearly and unmistakably a clerical error. The mortgage is dated February 9th 1911, the notes secured are dated the same day and due Nov. 1, 1911, and Jan. 1, 1912. Gorder v. Hilliboe, (N. D.) 115 N. W. 843.

The testimony of Jerry Ryan and Will Ryan as to the clerical error in the mortgage was admissible because of the fact that the evidence at that time in the record disclosed that the defendant had actual knowledge of the mortgage and of the property intended and designed to be mortgaged, and of the fact that the year 1912 was written therein instead of the year 1911, by error. Love v. Putman, 59 N. W. 691 (Neb.); Adamson v. Peterson, 29 N. W. 321 (Minn.)

WHITING, P. J.   Plaintiff, claiming that the defendant had wrongfully converted certain corn upon which he held a chattel mortgage, brought this action to recover the value of such corn. Verdict and judgment being in favor of the plaintiff and a new trial having been refused, defendant appealed from such judgment and order denying a new trial.

Respondent contends that there is no question properly before us for consideration, because no bill of exceptions nor statement of the case was properly and timely settled, and because no proper specifications of errors or of the particulars wherein the evidence was claimed to be insufficient were properly saved and preserved in a settled record. We have carefully considered the record and find respondent's contention unfounded; the record was settled by the trial court within the time as extended by such court, and in such record we find specifications of errors and of particulars wherein it is claimed that the evidence was insufficient to support the verdict and the judgment, which specifications present the same questions presented to the trial court upon the motion for a new trial made upon the minutes of the court. The assignments of error, presented in the printed record in this court, follow such specifications preserved in the settled record.

But two questions are before us for determination upon the merits of this appeal, to wit: (1) Did the trial court err in receiving certain evidence offered by plaintiff? (2) If the receiving of such evidence was error, was it prejudicial error?

Plaintiff's cause of action was based upon a chattel mortgage given to him by one Warren. This mortgage, as written, described "all the crops that grow on the above-described land in the year 1912," while the action was brought for the conversion of corn grown in the year 1911. The complaint alleged that the writing of the figure "2" instead of the figure "1" was a "clerical error," and that both parties to the mortgage intended and supposed that the same described the crop of 1911. The complaint set forth other facts tending to show the real intent of the parties, and also alleged scienter on the part of defendant. No reformation of the mortgage was sought, and the mortgagor was not made a party to the action. Evidence supporting the above allegations of the complaint was received over timely and proper objections by defendant, and the effect of such evidence was also questioned by motion for directed verdict. The chattel mortgage itself and proof of its filing were received in evidence.

[1] While evidence dehors a written instrument may often be admissible to explain ambiguities therein or to aid defective descriptions, yet such evidence is inadmissible where its effect would

be to reform such instrument, except where reformation is proper and has been sought.

[2] It is certainly fundamental that where one seeks to recover in a cause of action based upon a written instrument, he must rely upon the writing as it was executed, or else must seek a reformation thereof; therefore, in the action before us, plaintiff was bound to recover, if at all, upon the chattel mortgage as executed and filed, or else procure a reformation thereof and prove that defendant had knowledge or notice of the error in the instrument.

[3] Respondent contends that the error in the chattel mortgage was a "clerical" error, and that mere clerical errors are not the subject of reformation in a court of equity. He cites the case of Carr v. Williams, 10 Ohio, 305, 36 Am. Dec. 87, wherein it is held: "Mere clerical errors cannot be corrected in equity, because there is no defect to be rectified; the remedy at law is perfect"— and the case of Sprague v. Edwards, 48 Cal. 239, wherein it was said: "When it is apparent upon the inspection of a contract that, by a clerical error, a wrong word has been inserted, it will be read, in an action at law, as though the right word was in its place, and resort need not be had to a court of equity for a reformation of the instrument." These cases state a sound rule of law, the application of which is in harmony with appellant's contention. It must be understood that the "clerical error" referred to in these decisions is a clerical error of the class referred to in the case of Hughes v. Payne, 22 S. D. 293, 117 N. W. 363, an error which appears to be such on the face of the instrument, and the nature of which is ascertainable from the instrument itself. Where a contract contains such an error, a party thereto should not, and could not go into a court and seek a reformation thereof for the simple reason that no such relief is necessary, and courts of equity cannot be required to grant useless decrees. In other words, it is only when the contract, taken as a whole, fails to record the agreement of the parties that reformation can be sought; and it is only when reformation is sought that any evidence offered for the purpose of showing the intent of the parties and the fact that a mistake was made becomes competent or material. Not having sought a reformation of the mortgage, all of the allegations of the complaint

38—Vol. 31, S. D.

in regard to the intent of the parties were surplusage, and all evidence in support thereof immaterial and incompetent and its admission error; it not having been received to aid a faulty description, but to entirely change one that was free from all ambiguity.

[4] Was the error in receiving and considering such evidence prejudicial? It clearly was unless, as contended by respondent, the writing into the mortgage of the figure "2" instead of "1" was a clerical error apparent on the face of the chattel mortgage, so that upon reading the mortgage one would construe it as a mortgage covering the "1911" crop, and so construe it without any outside evidence as to intent of parties. If it should be so construed, the filing thereof gave constructive notice to the whole world that plaintiff held a mortgage on the 1911 crop, and other proof of intent of parties, as well as proof of actual notice on part of defendant, becomes surplusage and its admission harmless error.

Respondent cites the case of Gorder v. Hilliboe, 17 N. D. 281, 115 N. W. 843, as an authority, upon the point that this mortgage should be construed as a mortgage of the 1911 crop. The cases are hardly parallel. In the North Dakota case, to secure a note coming due in October, 1904, a mortgage was given on December 14, 1903, the date of the note, which mortgage read that it was given on "all crops that shall be sown, planted, grown, raised, or harvested during the year 1903." The court said that it was clear that it was not intended to mortgage, in December, crops to be grown that same year, the growing of which would be recognized by all as an impossibility in that state, and that, inasmuch as, under the statute of that state, the crop of 1904 was the only one upon which a legal mortgage could be given, it became clear that the parties intended to mortgage the crop of 1904, and that therefore the mortgage should be held to cover the 1904 crop. It has been repeatedly held that a mortgage upon "crops to be grown" without specifying the year or years is void for uncertainty. McConnell v. Langdon, 3 Idaho, 157, 28 Pac. 403; Eggert et al. v. White, 59 Iowa, 464, 13 N. W. 426; Barr v. Cannon, 69 Iowa, 20, 28 N. W. 413; Cole v. Kerr, 19 Neb. 553, 26 N. W. 598.

The above rulings were made without any reference to statute limiting crops that can be mortgaged to those to be grown within a certain time after the mortgage was given. It is possible that,

under a statute like that of this state (section 2102, C. C.) declaring void mortgages on crops not to be grown within one year after the date of mortgage, if a chattel mortgage given in March, 1911, purported to cover crops "to be grown," but failed to specify the year in which they were to be grown, or, as in the North Dakota case, specified an impossible year, a court, in construing such mortgage, might be justified in indulging in a presumption that the year 1911 was the one intended, and construe such mortgage as though the year 1911 had been specified therein, yet it does not follow that a court should indulge in the presumption that parties did not intend to enter into a contract as written because, forsooth, such contract as written would be invalid, and then attempt to make for such persons a valid contract by changing the wording thereof. This would certainly introduce a most dangerous rule, and one which finds no support in reason or authority.

The so-called "clerical error" in the chattel mortgage before us is one that can be cured only by a reformation of the contract.

The judgment and order appealed from are reversed.