[Crim. No. 1008. First Appellate District, Division Two.—May 3, 1922.]

## THE PEOPLE, Respondent, v. THOMAS FOLEY, Appellant.

[1] CRIMINAL LAW—ROBBERY—IDENTIFICATION OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—In this prosecution for robbery, the record, taken as a whole, contains abundant evidence in the testimony of the eye-witnesses to the crime to identify the defendant as one of its perpetrators.

[2] ID.—FAILURE TO TESTIFY—EFFECT OF — INSTRUCTION—APPEAL.—A defendant cannot be heard to complain on appeal of the omission to instruct the jury to the effect that the failure of the defendant to testify in his own behalf raises no presumption against him, in the absence of a request for such an instruction.

[3] ID. — PERSONAL CONDUCT OF PART OF DEFENSE — INSTRUCTIONS — EFFECT OF.—Where a defendant had the benefit of legal advice during almost the entire course of his trial, and when he was left without legal assistance it was because of his own demand and insistence, he cannot contend on appeal that he should not be held to the rule as to the effect of failure to request instructions.

APPEAL from a judgment of the Superior Court of Alameda County. George Samuels, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nathan C. Coghlan for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of conviction of the crime of robbery. The offense alleged in the indictment was the robbery of the Bank of Alameda County, located at Alvarado, California. Two prior convictions for felonies were also charged against the defendant, to which he pleaded guilty.

The president, cashier, and another employee of the bank testified that on October 13, 1920, at about 11 o'clock in the morning, four men arrived at the bank in an automobile. While one of them remained outside on guard, the other three entered the bank and, after shooting the president through the shoulder, secured about twenty-three thousand dollars in money and escaped in the automobile after having locked the employees of the bank in a vault.

Appellant calls to our attention the fact that some of the witnesses for the prosecution were not absolutely positive in their identification of the defendant as one of the perpetrators of the crime. It is true that two of the witnesses were reluctant to positively identify the defendant. One of these witnesses, however, stated that the defendant "resembled the man that was there"; that his "features and all, resembled the man that was there." Another witness, while not positive in his identification, stated that he recognized the defendant by some pecularity of his cheek-bone and hair, and by his hands, which were unusually small. Owing to the fact that the men who

robbed the bank donned masks upon entering the building, it was difficult for the witnesses, who had not observed them until they were masked, to be absolutely positive in identifying the defendant because such identification necessarily depended upon a recognition of such physical peculiarities as were unhidden by the mask. But the effect of any reluctance upon the part of these witnesses to state beyond all possibility of doubt that the defendant was one of the men who entered the bank upon the occasion in question is entirely overcome by the positive identification of defendant by the witness Matoza. Matoza was a customer of the bank and arrived there while the robbery was going on. He heard the shots fired and one of the men on guard forced him to enter the bank. He was later locked in the vault with the employees of the bank. He testified positively that he saw the defendant at the bank; that defendant was the first of the three men to enter the bank. He stated that he identified defendant by his face and his eyes, having seen defendant enter the bank before he was masked. The bank cashier also positively identified the defendant. He saw the defendant go around to the directors' room and meet there the president of the bank. At that time defendant was adjusting his mask. Two shots were fired. This witness also saw the defendant gather up the money. Upon cross-examination this witness swore, positively, that defendant was one of the men who robbed the bank. He stated that he could not be mistaken; that he had a picture in his mind of the entire incident which he would never forget.

[1] Taken as a whole, the record contains abundant evidence in the testimony of the eye-witnesses to the robbery to identify the defendant as one of its perpetrators. Added to this there is the unequivocal testimony of the witness Kirk. He testified that on the afternoon of October 13, 1920, he was injured while at his work and was obliged to return to his home in Alameda. There he found the defendant in company with Jack Beebe, a man whom Kirk had previously known and who has been convicted of participation in this bank robbery. The witness was sent with a note to the so-called "Howard Street Shack" in San Francisco, to be delivered to "Spanny" Valente. Kirk delivered the note and Valente returned with him

to his home in Alameda, where the defendant and Beebe
awaited them. Kirk then saw the defendant and his com-
panions sorting and counting a large amount of money,
some of it loose and some of it in packages. The defend-
ant remained secluded at the home of this witness for two
nights, and during that time the witness heard defendant
talking with his companions about the details of the bank
robbery.

Indeed, the evidence connecting the defendant with the
crime is so convincing and so abundant in the record that it
would seem idle to discuss this point at all were it not that
the attorney for the appellant urges upon our attention
the fact that the defendant at the trial insisted upon con-
ducting, personally, much of his defense, although he had
an attorney who was present in court and who attempted
to conduct his case for him. . In reply to the suggestion
that the defendant was handicapped by his lack of legal
learning, it is only necessary to observe that the part which
defendant took in examining the witnesses was taken upon
his own insistence in open court. It is also pertinent to
observe that although the defendant was without training in
legal procedure, he, nevertheless, showed great acuteness in
questioning the witnesses, and it is apparent that his par-
ticipation in the defense of his case in no way weakened
or jeopardized his cause.

Objection is made to a portion of an instruction that ''all
evidence tending to show that the accused was in another
place at the time of the offense is in direct conflict with
that which tends to prove that he was at the place where
the crime was committed, and actually committed it.'' It
is argued that this instruction would lead the jury to be-
lieve that something more than a reasonable doubt as to
the presence of the defendant at the time and place of the
robbery was necessary for his acquittal; that the jury might
understand that a preponderance of evidence in favor of
the defendant was necessary to justify a verdict of ''not
guilty.'' It is difficult for us to see how such a construc-
tion could be placed upon this language, and especially so
in view of the fact that the trial court, in the same in-
struction, went on to say that in this conflict of evidence
the defendant was to be given the benefit of every reason-
able doubt.

57 Cal. App.—36

[2] It is also urged that the trial court erred in not giving the jury an instruction to the effect that the failure of the defendant to testify in his own behalf raised no presumption against him. Defendant would have been entitled to such an instruction had he requested it, but the record does not disclose that he did so. It was said in the case of *People* v. *Flynn,* 73 Cal. 511 [15 Pac. 102]: "The defendant did not take the stand as a witness in his own behalf, and the court did not instruct the jury in reference to his failure to do so. It is claimed that 'it was the duty of the court to charge the jury that no presumption of guilt followed from his failure to testify in his own behalf and that they could not consider his failure to testify in arriving at a verdict.' It does not appear from the bill of exceptions that any such instruction was asked. If counsel for defendant desired such an instruction to be given, they should have asked it at the proper time; and as they failed to do that they cannot now be heard to complain. (*People* v. *Haun,* 44 Cal. 100; *People* v. *Ah Wee,* 48 Cal. 239; *People* v. *Marks,* 72 Cal. 46 [13 Pac. 149].)"

[3] Appellant contends that he should not be held to this well-settled rule because he, personally, conducted a portion of his defense. This contention is without merit upon the record before us. As we have stated, defendant was provided with counsel. In the course of the trial, he twice insisted upon taking the conduct of the case into his own hands, but demanded, for at least a part of the time, that his counsel remain beside him in the courtroom and advise with him. The court and counsel acceded to defendant's demands and great latitude was allowed him in the conduct of his case. After he had, personally, examined some of the witnesses, he again turned the case over to his counsel, but toward the end of the trial he demanded that he be allowed to "take the lead" himself and stated that he desired his counsel to withdraw. The court then excused counsel from acting any further, stating that this was done upon the request of the defendant. It appears, therefore, that the defendant had the benefit of legal advice during almost the entire course of the trial, and that when he was left without legal assistance, it was because of his own demand and insistence. Under such circumstances,

this fact should not militate against the well settled rule of law above referred to. Most especially is this true in view of the entire record, which leaves no doubt of the justness of this verdict.

There are no other matters requiring discussion. The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 29, 1922.

All the Justices concurred, except Lawlor, J., and Wilbur, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro .tem.*, was acting.